UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| TIFFANY LINDSAY, <br> Plaintiff, | ) <br> ) <br> ) <br> ) | Case No. |
| v. | ) <br> ) | |
| THE CITY OF DETROIT and, <br> STEVEN BRANDON <br> Defendants | ) <br> ) <br> ) | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Tiffany Lindsay ("Lindsay") states the following for her Complaint against Defendant City of Detroit ("City") and Defendant Steven Brandon ("Brandon"):

1. This is a civil action arising under 42 U.S.C. § 1983.

2. Plaintiff sues Brandon in his individual capacity.

**JURISDICTION**

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

**VENUE**

4. Venue is proper under 28 U.S.C. § 1391(b).

5. At all times relevant herein, Plaintiff resided in and was a citizen of the City of Detroit, County of Wayne, and State of Michigan.

6. The incident giving rise to this case occurred in Wayne County, Michigan.

7. Defendant Brandon was at all relevant times a City of Detroit Police Officer who acted under color of State law and is a "person" for purposes of a 42 U.S.C. § 1983 action.

8. Defendant City of Detroit is a municipal subdivision of the State of Michigan, which is located in Wayne County, Michigan.

## COLOR OF STATE LAW

9. At all times relevant herein, Defendant Brandon acted under color of state law including statutes, ordinances, regulations, policies, customs and usages of the State of Michigan.

## FACTUAL BACKGROUND

10. On or about September 4, 2022, Plaintiff owned a dog named Jack.

11. On or about September 4, 2022, Plaintiff resided with her dog at 20266 Glastonbury Road, Detroit, Michigan ("Residence").

12. On September 4, 2022, Defendant Brandon along with K-9 Ares jumped over the closed gate that enclosed the back yard of Plaintiff's Residence in order to search Plaintiff's back yard.

13. Defendant Brandon did not have a warrant, probable cause or any other legal justification to search the fully enclosed and gated back yard of Plaintiff's Residence.

14. During Brandon's illegal search, Brandon encountered Jack and shot him dead.

15. Defendant Brandon (or someone working in concert with Brandon) took Jack's dead body from Plaintiff's back yard and deposited him into Plaintiff's neighbor's City of Detroit trash container.

16. Defendant Brandon's warrantless search of the back yard of Plaintiff's Residence was presumptively unreasonable and therefore violated Plaintiff's Fourth Amendment rights because, *inter alia*:

    a. "Warrantless searches are presumptively unreasonable." *Horton v. California*, 496 U.S. 128, 133 (1990);

    b. The back yard of Plaintiff's Residence was within the curtilage of her Residence, *Daugenbaugh v. City of Tiffin*, 150 F.3d 594, 602 (6th Cir. 1998) (warrantless search of backyard violated the Fourth Amendment).

3

17. Defendant Brandon's search of Plaintiff's Residence was unreasonable because there was no probable cause or any other legal justification for the search.

18. Indeed, Defendant Brandon agreed with another Detroit Police officer who stated to Brandon that they were, "in no hurry."

19. The right of individuals to be free from unreasonable and warrantless searches is a clearly established constitutional right since at least 1990. *Daugenbaugh,* 150 F.3d at 603 (citing *Horton v. California*, 496 U.S. 128, 133 (1990)).

20. Plaintiff's right to be free from warrantless searches of her back yard has been sufficiently clear and well established since 1997 that no reasonable officer could have concluded that they were permitted to search Plaintiff's backyard under these circumstances. *Daugenbaugh,* 150 F.3d at 603 ("the police will be precluded in the future from relying on qualified immunity as a defense to warrantless searches of garages and backyards").

21. But for Defendant Brandon's illegal search of Plaintiff's Residence, Defendant Brandon would never have encountered Plaintiff's dog because Plaintiff's dog was safely enclosed in Plaintiff's fenced-in back yard.

22. Moreover, Defendant Brandon's seizure of Jack by shooting him dead was unreasonable because that intrusion was more intrusive than necessary under the circumstances.

23. "[T]here is a constitutional right under the Fourth Amendment to not have one's dog unreasonably seized." *Brown v. Battle Creek Police Department,* 844 F.3d 556, 566 (6th Cir. 2016).

24. It is settled law, negating any qualified immunity, that the owners of dogs, even unlicensed ones, are entitled to constitutional and fourth amendment protections as they retain a property interest in the dogs. *Smith v Detroit*, *et al*, 751 Fed. Appx. 691, 696 (2018).

25. Defendant Brandon's seizure was the most significant intrusion possible because Jack died as a result of Defendant Brandon's shooting Jack.

26. Moreover, Defendant Brandon (or someone working in concert with him) apparently attempted to hide the seizure of Jack from Plaintiff by stuffing Jack's body into Plaintiff's neighbor's trash bin, which constituted a separate unreasonable seizure of Plaintiff's property (i.e., the body of Defendant's dog).

27. Defendant Brandon's (or someone working in concert with him) removal of the body of Defendant's pet without her consent or knowledge was also an attempt to spoliate evidence.

28. Indeed, on information and belief, it is City of Detroit Police policy to give citizen owners the choice to retain the body of pet dogs that Detroit police shoot.

29. Plaintiff was present at her Residence during the incident that gives rise to this case.

30. Had Defendant Brandon simply knocked on Plaintiff's door and requested consent, Plaintiff could have:

    a. alerted Brandon that her dog Jack was in the back yard of her Residence;

    b. safely sequestered her dog Jack; and

    c. consented to the search.

31. Had Defendant Brandon simply knocked on Plaintiff's door and requested consent, Defendant Brandon would not have shot Plaintiff's dog Jack.

32. Defendant Brandon's failure to attempt to deploy a less intrusive means necessary to search Plaintiff's back yard (i.e., search by consent) lead directly and foreseeably to Brandon shooting Plaintiff's dog.

33. Plaintiff suffered damages, including without limitation, significant mental anguish and suffering that flows naturally from the Constitutional violations alleged above.

# COUNT I
# VIOLATIONS OF CIVIL RIGHTS
# 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
# AGAINST DEFENDANT BRANDON
# FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES
# AND ATTORNEY'S FEES

34. Plaintiff re-alleges all of the preceding paragraphs.

35. "The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home--a zone that finds its roots in clear and specific constitutional terms: "***The right of the people to be secure in their ... houses ... shall not be violated***." ... In terms that apply equally to seizures of property and to seizures of persons, ***the Fourth Amendment has drawn a firm line at the entrance to the house***. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 589-90 (1980).

36. The search of Plaintiff's home and seizure of Plaintiff's dog without a warrant was presumptively unreasonable. *Id*. at 586; *Georgia v. Randolph*, 547 U.S. 103, 120 (2006).

37. Defendant Brandon's acts were unreasonable because, *inter alia*, (i) there was no reasonable suspicion of Plaintiff and (ii) there was no warrant.

7

38. The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably seizing a citizen's property.

39. "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), overruled on other grounds, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (citation omitted).

40. An individual has a Fourth Amendment property right in their pets. *San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977-78 (9th Cir. 2005); *Brown v. Battle Creek Police Department*, 844 F.3d 556, 568 (6th Cir. 2016).

41. That an individual has a property right in their pets was clearly established in this Circuit in 2013. *Brown*, 844 F.3d at 567.

42. Pets are more than just a personal effect. *San Jose,* 402 F.3d at 975.

43. The emotional attachment to a pet is not comparable to a possessory interest in furniture or other inanimate property. *Id*.

44. Indeed, Plaintiff's Fourth Amendment interests involved are substantial because the bond between an owner and their pet is strong and

8

enduring and Plaintiff thinks of her pet "in terms of an emotional relationship, rather than a property relationship." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003).

45. Defendant Brandon's acts described herein were intentional, grossly negligent and amounted to reckless or callous indifference to Plaintiff's constitutional rights.

46. Defendant Brandon's seizure of Jack was objectively unreasonable.

47. Defendant Brandon admitted in writing that he shot and killed Plaintiff's dog.

48. No exigent circumstances warranted the intrusions (search or seizure) involved in this case.

49. Indeed, had Defendant Brandon or any officer working with him that night simply knocked on Plaintiff's door and requested consent to search Plaintiff's yard, Plaintiff would have been able to alert the officers about the presence of Plaintiff's dog and sequester Jack inside Plaintiff's Residence, which would have allowed Defendant Brandon and other officers to search Plaintiff's yard, in which case the events giving rise to this case would not have occurred.

50. Defendant Brandon created any exigency that he might assert justified the shooting and seizure of Jack.

51. No governmental interest justifies the search or seizures involved in this case.

## COMPENSATORY DAMAGES

52. Under 42 U.S.C. § 1983 Plaintiff is entitled to an award of compensatory damages against the Defendant Brandon in his individual capacity, which includes "damages for the emotional distress suffered by Plaintiffs . . . and any other injury that is the result of . . . the unlawful seizure of Plaintiffs'" dogs. *Moreno v. Hughes*, 157 F.Supp.3d 687, 692 (E.D. Mich. 2016).

## PUNITIVE DAMAGES

53. Defendant Brandon's actions were:

   a. Reckless;

   b. Showed callous indifference toward the rights of Plaintiff; and

   c. Were taken in the face of a perceived risk that the actions would violate federal law.

54. Plaintiff is entitled to an award of punitive damages against Defendant Brandon in his individual capacity, in order to punish him and to deter others.

### ATTORNEY'S FEES

55. Under 42 U.S.C. § 1988, if Plaintiff is the prevailing party in this litigation, then she will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs. costs, and Plaintiff prays for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

### COUNT II
### *MONELL* POLICY AND CUSTOM LIABILITY AGAINSTDEFENDANTS CITY OF DETROIT

56. Plaintiff re-alleges her prior allegations.

57. Defendants were aware of Plaintiff's ownership interests.

58. Defendant City of Detroit, including the Detroit Police Department's actions and inaction demonstrate its policy of failing to recognize clearly established constitutionally protected rights.

59. Defendant City of Detroit, including the Detroit Police Department, has a policy and custom of shooting its citizen's dogs, thereby

seizing the dogs, which policy is reflected in the City of Detroit police officers shooting more dogs than any other major city in the United States of America.

60. So pervasive is the City of Detroit's policy and practice that Detroit police officers deploy a "Destruction of Animal" form to keep track of each shooting.

61. Moreover, the City of Detroit police policy and practice of shooting dogs has been the subject of investigative reporting. C.J. Ciarmella, "Why Are Detroit Cops Killing So Many Dogs?," *Reason,* November 15, 2016, https://reason.com/2016/11/15/the-detroit-police-department-is-running/. See also, Conor Friedersdorf, "What Dog Shootings Reveal About American Policing," *The Atlantic,* June 13, 2007, https://www.theatlantic.com/politics/archive/2017/07/what-dog-shootings-reveal-about-american-policing/533319/.

62. Despite this, City of Detroit police officers continue to shoot Detroit citizen's pet dogs in violation of clear constitutional limits.

63. Defendant City of Detroit, including the Detroit Police Department, failed to train and supervise its police officers to limit their shooting of dogs in the City of Detroit, which has resulted in the City of Detroit police officers shooting more dogs than any other major city in the United States of America.

12

64. Upon information and belief, Defendants are officials with decision-making authority and decided and/or ratified the illegal seizures.

65. Indeed, each Destruction of Animal Report goes through an approval process that includes approval by the City of Detroit's Chief of Police or his delegate.

66. The Destruction of Animal report approval process is a sham rubber stamp.

67. Upon information and belief, the City of Detroit Police Department has never determined that any dog shooting was a violation of the Fourth Amendment.

68. Defendant City of Detroit, including the Detroit Police Department, has a custom of tolerance or acquiescence in shooting dogs in violation of the Fourth Amendment.

69. Defendant City of Detroit, including the Detroit Police Department, has a policy and custom of "shoot dogs first" without any regard for the limits of the Fourth Amendment.

70. As a direct and proximate cause of Defendant City of Detroit, including the Detroit Police Department's policy and custom, Plaintiff's constitutional rights have been violated and have caused Plaintiff to be damaged.

13

## COMPENSATORY DAMAGES

71.     Under 42 U.S.C. § 1983 Plaintiff is entitled to an award of compensatory damages against Defendant City of Detroit.

## ATTORNEY'S FEES

72.     Under 42 U.S.C. § 1988 if Plaintiff is the prevailing party in this litigation, then she will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

THEREFORE, Plaintiff prays for judgment under 42 U.S.C. § 1983 and 1988 against Defendant City of Detroit, for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees, for non-taxable expenses, for costs, and Plaintiff prays for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

        Respectfully submitted,

        /s/ Christopher S. Olson (P58780)
        Christopher S. Olson (P58780)
        OLSON PLLC
        32121 Woodward Avenue
        Suite 300
        Royal Oak, Michigan 48073
        (248) 672-7368
        colson@olsonpllc.mygbiz.com
        *Counsel for Plaintiff*

February 8, 2023
Detroit, Michigan